78 F.3d 585
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clint Clayborn BATES, Johnny Alton Smith, and Robert Lee
Smith, Defendants-Appellants.
 Nos. 95-5461, 95-5485, 95-5493.
 United States Court of Appeals, Sixth Circuit.
 Feb. 27, 1996.
 
 Before: MARTIN, NORRIS, and MOORE, Circuit Judges.
 OPINION
 MOORE, Circuit Judge.
 Clint Bates, Johnny Smith, and Robert Smith appeal their convictions and sentences for conspiracy to possess cocaine with intent to distribute, a violation of 21 U.S.C. § 846. All three raise sufficiency of the evidence claims. In addition, the defendants separately make arguments relating to the calculation of the drug quantity, pre-indictment delay, unlawful search of an automobile, and sentencing enhancements for obstruction of justice and playing an aggravating role. For the reasons that follow, we affirm in all respects.
 
 I. BACKGROUND
 
 1
 This case centers around a trip to California for drugs in 1988, and around the testimony of Odie Blakemore, who went on that trip. On the way back from California, Blakemore was driving a Buick LeSabre when he and his companions were stopped by the Texas Highway Patrol for speeding. One of the Texas troopers asked Blakemore if they could search the car, and he replied that it would be fine with him if it was fine with Robert Smith, who was in charge of the car. When the trooper asked Robert Smith the same question, Smith responded that he had no objection to a search but that the car was really in Odie Blakemore's control. Despite having assented orally in this manner to a search, neither Blakemore nor Smith signed the written consent form that was presented to them. Blakemore stated he would sign only if Smith signed; Smith refused to sign anything because he had trouble reading and writing.
 
 
 2
 The highway troopers searched the car and found two bricks of cocaine, together weighing about two kilograms. According to Blakemore, the cocaine had been obtained a couple of days earlier in Oakland, California, in a scheme masterminded by Clint Bates and Johnny Smith, Robert Smith's brother. Blakemore, Patricia Cole, and Robert Smith had driven to California from Memphis, Tennessee, following instructions by Johnny Smith. After arriving in Oakland, they met Johnny, who flew there separately from Memphis. They were also joined by Alma Delk. Blakemore testified that Johnny made all the arrangements for the cocaine purchase. Johnny waited at the hotel for a phone call. Once the call came, they all drove to a parking lot several miles away. Blakemore, Cole, and Delk waited in the car while the Smith brothers walked "around the corner" and returned with cocaine in Cole's beige purse. Johnny parted with the others, telling them he would meet them at his house in Memphis. The others began the long drive back toward Tennessee with the drugs, heading east until they were stopped by the police in Texas.
 
 
 3
 After the arrest in Texas, Blakemore claimed that Robert Smith repeatedly threatened him, telling him that if he didn't "take" the charges, his life and his family members' lives would be in danger. Bates also allegedly threatened Blakemore, at one point stating that he might "kill" Blakemore.
 
 
 4
 Defendants were charged with conspiracy in federal court, following a state court proceeding in Texas in which Robert Smith was convicted for possession of the cocaine. After the state proceeding ended, the Texas judge issued a destruction order on the cocaine, and the actual drugs were not available for the subsequent federal prosecution. The government relied on testimony by the Texas crime lab supervisor, Roy Murphy, to establish the identity and quantity of drugs.
 
 
 5
 In addition to the destroyed cocaine, some tape-recorded conversations were lost by the government. A recording had been made by the Texas troopers of conversations with the arrestees. Like the cocaine, this was apparently destroyed in accordance with Texas procedure. In addition, there was a tape of a telephone call between Blakemore and his girlfriend, with TBI Agent John Mehr monitoring the call, which the government was unable to locate. Although defendants were clearly entitled to this latter tape under the Jencks Act, 18 U.S.C. § 3500, the district court found that the loss of the tape was not prejudicial and not an intentional act by the government.
 
 
 6
 The jury convicted all three defendants for conspiracy to possess with intent to distribute, under 21 U.S.C. § 846, and defendants were sentenced in accordance with the 1994 edition of the Guidelines Manual. The sentencing decisions by the district court that are relevant to this appeal are: (1) the quantity of drugs attributable to Bates, (2) Bates's two-level enhancement for obstruction of justice, (3) Bates's three-level enhancement for being a manager or supervisor, and (4) Johnny Smith's four-level enhancement for being an organizer or leader.
 
 II. SUFFICIENCY OF THE EVIDENCE
 
 7
 Defendants fail to take proper account of the standard of review in arguing that the evidence was insufficient to convict them. When assessing sufficiency of the evidence, "we do not weigh the evidence, consider the credibility of the witnesses, or substitute our judgment for that of the jury. Instead, we look only to whether after reviewing 'the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.' " United States v. Hilliard, 11 F.3d 618, 620 (6th Cir.1993), cert. denied, 114 S.Ct. 1099 (1994) (citation omitted) (quoting United States v. Beddow, 957 F.2d 1330, 1334 (6th Cir.1992)). Yet, weighing evidence and considering credibility is all that defendants ask us to do here. Bates argues that the evidence was insufficient to tie him to the conspiracy. Although he actually concedes that Blakemore's testimony was enough to "link" him to the conspiracy, he goes on to challenge Blakemore's motives and highlight the conflicts between Blakemore's testimony and other witnesses' testimony. Johnny Smith does the same thing, arguing that there was "no credible evidence" to prove that he was a part of the conspiracy.
 
 
 8
 The government correctly points out that Blakemore's testimony alone provides sufficient evidence to sustain defendants' convictions. According to Blakemore, both Bates and Johnny Smith pressured him into going to California with Robert Smith. They organized and funded the trip. Bates's teenage nephew's car was used to drive there. Johnny and Robert Smith personally obtained the cocaine in Oakland. And Bates and Robert Smith threatened Blakemore with harm if he did not "take" the charges. The jury was clearly entitled to believe Blakemore, and defendants cannot now ask this court to reject that belief.
 
 
 9
 Robert Smith's sufficiency claim takes on slightly different form. He argues that the government "failed to meet its burden of proof" in identifying the substance found in the car as cocaine, because the cocaine was destroyed before defendant could inspect and test it. Smith's claim seems to assume that the defendant must be given access to drugs before the prosecution can meet its burden of proof. This assumption is countered by Roy Murphy's testimony that the substance seized was cocaine, based on multiple tests. The government is not required to introduce drugs directly into evidence in order to prove their identity--identity "may be ascertained by circumstantial evidence." United States v. Wright, 16 F.3d 1429, 1439 (6th Cir.), cert. denied, 114 S.Ct. 2759 (1994). Murphy's testimony was sufficient evidence of their identity.
 
 III. CALCULATION OF DRUG QUANTITY
 
 10
 Bates points to "two instances" in which the district court supposedly miscalculated the quantity of drugs attributable to him in sentencing him under U.S.S.G. § 2D1.1(c)(6) (at least 2 KG but less than 3.5 KG of cocaine). First, he argues that 18 ounces sold earlier by Johnny Smith to someone unrelated to the conspiracy, Johnny Temple, should not have been included, because Bates was not present at the sale. Bates fails to notice that the district court felt the same way and specifically excluded this amount from his sentence.
 
 
 11
 Second, Bates argues that the amounts attributed to him by Blakemore's testimony should have been excluded because the testimony "was unreliable." This is simply a variant of Bates's sufficiency argument. The district court's calculation of "the quantity of controlled substance for which a defendant is to be held accountable is a finding of fact" and must be accepted "unless [it is] clearly erroneous." United States v. Brannon, 7 F.3d 516, 520 (6th Cir.1993). As the Brannon court noted in this very context, "We must defer to the district court ... in its assessment of the credibility of the witnesses...." Id. Blakemore's testimony tied Bates to the California trip, which yielded two kilograms of cocaine, and an additional "half kilo" excursion with Johnny Smith, which helped finance the California trip. The district court was entitled to rely on this testimony and thereby hold Bates accountable for more than 2 kilograms but less than 3.5 under U.S.S.G. § 2D1.1(c)(6).
 
 IV. OBSTRUCTION OF JUSTICE
 
 12
 Bates next takes issue with his two-level enhancement for obstruction of justice, focusing again on the argument that Blakemore's testimony was just "not credible." For the same reasons as before, Bates's contention must fail. 18 U.S.C. § 3742(e) requires that we defer to the district court's judgment as to the credibility of witnesses. In this case, Blakemore claimed that Bates and Robert Smith both pressured him to take the charges, and that on at least one occasion, Bates alone threatened to kill him. This testimony by satisfies the government's burden under § 3C1.1. See United States v. Hoffman, 982 F.2d 187, 191-92 (6th Cir.1992) ("Facts supporting enhancement under this provision must be proven by a preponderance of the evidence.... We review the district court's findings on this issue for clear error."). It does not matter that most of the instances cited by Blakemore related to threats by Robert Smith. Even if only one out of a hundred instances related to Bates, it is sufficient evidence if it showed him "threatening, intimidating, or otherwise unlawfully influencing a co-defendant [or] witness," and the district court believed it.
 
 V. ENHANCEMENTS FOR AGGRAVATING ROLE
 
 13
 Bates and Johnny Smith appeal their sentencing enhancements for playing leadership roles in the conspiracy. Smith received a four-level increase for being an "organizer or leader," and Bates received a three-level increase for being a "manager or supervisor," under U.S.S.G. § 3B1.1(a) and (b). This circuit has consistently held that the district court's factual findings underlying an application of this guideline are reviewed for clear error. See United States v. Ward, 68 F.3d 146, 151 (6th Cir.1995); United States v. Okayfor, 996 F.2d 116, 122 (6th Cir.) (per curiam), cert. denied, 114 S.Ct. 238 (1993).
 
 
 14
 Application note 4 to U.S.S.G. § 3B1.1 lists seven factors that are relevant to deciding whether an enhancement under this provision should be made: "(1) the exercise of decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others." United States v. Bashara, 27 F.3d 1174, 1183 (6th Cir.1994), cert. denied, 115 S.Ct. 909 (1995). It is not necessary to satisfy all of the factors before applying the guideline. Id.
 
 
 15
 In this case, the district court specifically found that Bates recruited Blakemore for the trip to California and helped get the money to finance the trip. With respect to Johnny Smith, the district court found more extensive control and management: (1) Smith recruited Alma Delk for an earlier trip to California; (2) Smith postponed the California trip for a day because of his "bad feeling about it"; (3) Smith and Bates financed the California trip; (4) Smith and his brother Robert actually got the drugs in California; and (5) Johnny Smith provided his brother with expense money. All of this is grounded in the testimony of one or more witnesses at trial. Certainly, it was appropriate for the district court to differentiate between Johnny Smith's and Bates's roles by giving Smith the greater enhancement. Similarly, both Smith and Bates obviously had more control and decision-making authority than the others in the conspiracy. Because the evidence showed that they had a greater role than their cohorts, and because there were clearly five or more participants in the conspiracy, Johnny Smith's and Bates's sentences were properly enhanced under U.S.S.G. § 3B1.1(a) and (b).
 
 
 16
 VI. PRE-INDICTMENT DELAY AND DESTRUCTION OF EVIDENCE
 
 
 17
 Bates finally claims that the government's pre-indictment delay of nearly five years violated due process. Bates has an understandable complaint here, since the government never provided the slightest justification for waiting so long to indict defendants. Moreover, evidence was lost during the interim: the seized cocaine and tape recordings made in Texas were destroyed pursuant to a state court destruction order. Notwithstanding this extreme delay and loss of evidence, however, Bates has failed to meet his burden of showing a due process violation under established Sixth Circuit law.
 
 
 18
 Pre-indictment delay constitutes a due process violation only if the defendant can demonstrate "that he suffered substantial prejudice as a result of the delay and that the government purposely delayed in order to gain a tactical advantage over the defendant." United States v. Lash, 937 F.2d 1077, 1088 (6th Cir.1991), cert. denied, 502 U.S. 949 (1991), 502 U.S. 1061 (1992). See also United States v. Duncan, 763 F.2d 220, 222 (6th Cir.1985). Bates cannot demonstrate either prejudice or improper purpose in this case. First, Bates points to nothing in the destroyed evidence that would have helped his defense. Of course, it may often be difficult for parties to know how evidence can help them if they have no access to it, but here Bates cannot even produce a conceivable basis for finding "substantial prejudice." Second, Bates fails to show that the government intentionally delayed to gain an advantage over him. The evidence from Texas was destroyed by the courts in Texas, not the U.S. Attorney's office, and in the absence of any showing of possible prejudice, it is hard to see how the government could have thought it would be gaining any advantage by delaying long enough for the cocaine and recordings to be destroyed. Indeed, at one point, the district court suggested that the destruction of the cocaine might actually have helped the defense. The district court correctly found that defendant had failed to make an adequate showing of either prejudice or improper motive.
 
 
 19
 Bates essentially concedes that he can show no prejudice when he argues that this court should instead apply a "presumed prejudice" standard under Doggett v. United States, 505 U.S. 647 (1992), which involved a violation of the Sixth Amendment speedy trial provision. However, Bates's theory is foreclosed by United States v. Marion, 404 U.S. 307, 313 (1971), which held that the protections provided by the Sixth Amendment speedy trial guarantee are inapplicable in a case of pre-indictment delay. Doggett itself reaffirmed this principle, see Doggett, 505 U.S. at 654-55, and so Bates is left only with the less-extensive protection of the Due Process Clause. As the Court noted both in Marion and United States v. Lovasco, 431 U.S. 783 (1977), the primary protection for defendants against pre-indictment delay lies in the relevant statutes of limitations, and the Due Process Clause only "has a limited role to play in protecting against oppressive delay." Lovasco, 431 U.S. at 789-90 (citing Marion, 404 U.S. at 324). In light of the foregoing, Bates did not even come close to meeting his burden of showing that the pre-indictment delay in his case amounted to a due process violation.
 
 
 20
 As a final matter, Bates has not shown a violation of the Jencks Act warranting reversal in the loss of the tape-recorded telephone call between Blakemore and Blakemore's girlfriend. The Jencks Act, 18 U.S.C. § 3500, entitles defendants to copies of statements by government witnesses that are in the government's possession and that "relate[ ] to the subject matter as to which the witness has testified [on direct examination]." The district court's findings relating to Jencks Act material are reviewed for abuse of discretion. United States v. DeFranco, 30 F.3d 664, 667 (6th Cir.), cert. denied, 115 S.Ct. 349 (1994). In this case, the district court conducted a separate hearing, with testimony by TBI Agent Mehr as to the contents of the recording and opportunity for defense counsel to cross-examine. The district court concluded that the loss of the tape was "accidental" and that there was nothing in it that might have benefited defendants. Given the district court's factual finding of inadvertence, the district court was entitled to "apply whatever remedy it deem[ed] just in the circumstances." DeFranco, 30 F.3d at 667. See also United States v. McCoy, 848 F.2d 743, 746-47 (6th Cir.1988) (where government in good faith "made several attempts to locate" a lost statement but could not, it "fully met its obligations under the law"). Given the district court's conclusion that there was no prejudice from the loss of the tape, it was entirely appropriate for the court to grant no remedy, aside from an admonition to the government that their handling of the case left much to be desired. We find no abuse of discretion.
 
 VII. SEARCH PURSUANT TO CONSENT
 
 21
 Robert Smith argues that the district court erroneously denied his motion to suppress evidence obtained from the search of the car in Texas. Smith admits that he and Blakemore orally assented to a search. However, Smith now asserts that "[t]here is no evidence either the appellant or Mr. Blakemore were explained the alternative of refusing to allow the request to search." Smith states that the consent could only be valid if there was a knowing and intelligent waiver of defendants' Fourth Amendment rights--in other words, only if the officers advised defendants of their constitutional right to refuse the search. Here, no such knowing waiver was present.
 
 
 22
 Smith ignores the fact that the Supreme Court squarely decided this issue in Schneckloth v. Bustamonte, 412 U.S. 218 (1973). There, the Court held that for a consent search to be valid, it would only have to be voluntary. The consent would have to be uncoerced, but there would be no requirement of "proof of knowledge of a right to refuse." Id. at 234. Schneckloth remains controlling precedent to this day, and it directly disposes of Robert Smith's claim.
 
 
 23
 AFFIRMED.