RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0302p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ERIC FLORES,

*Defendant-Appellant.*

No. 19-6011

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 7:18-cr-00021-3—Robert E. Wier, District Judge.

Decided and Filed:  September 10, 2020

Before:  SUHRHEINRICH, LARSEN, and READLER, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  Steven S. Nolder, SCOTT & NOLDER CO. LPA, Columbus, Ohio, for Appellant. Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

─────────────────

## OPINION

─────────────────

CHAD A. READLER, Circuit Judge.  Eric Flores, a federal inmate, was convicted for his role in the brutal stabbing of a fellow inmate.  In calculating Flores's Sentencing Guidelines range, the district court increased the base offense level by five pursuant to U.S.S.G. § 2A2.2(b)(3)(B) because the victim suffered "serious bodily injury." Seeing no error in that conclusion, we **AFFIRM**.

**BACKGROUND**

A fight broke out between inmates inside Big Sandy federal penitentiary. When another inmate attempted to intervene, two other inmates—one of whom was Flores—attacked the intervenor, stabbing him at least six times with prison-made "shanks." As prison guards restored order, they heard the stabbing victim shouting "help me, help me," expressing the belief that he was dying. The guards observed large visible wounds on the victim's back, leg, and hand, with blood soaking through his clothing and pooling at his feet. The prison nurse later observed the same wounds to the victim's back, leg, and hand.

The victim was transported to a nearby hospital to treat large lacerations on his back, two smaller cuts to his side, one large cut on his hand, and another on his calf. CT scans showed that the victim's left shoulder blade was fractured by one of the punctures. The scans also revealed deep bruising caused by internal bleeding as well as air pockets introduced by the puncture wounds. Chemical testing indicated that the victim had a lower than average red blood cell count, hemoglobin concentration, red blood cell proportion, and red blood cell distribution width, consistent with significant blood loss.

Doctors performed five laceration repairs. As the lacerations were bleeding beneath the skin, each required sutures, with some requiring "complex" multi-layer-deep sutures. Because the wounds were made by non-sterile shanks, the victim was screened for and given intravenous medicine to prevent sepsis. The victim was also prescribed and administered two types of narcotic pain killers: an oral opioid and an intravenous morphine-analogue. During this period, medical records revealed that the victim indicated his pain levels were between 6 and 8 out of 10.

Flores was indicted by a grand jury for assaulting the victim with a dangerous weapon, in violation of 18 U.S.C. § 113(a)(3). The victim, however, refused to cooperate with the government, and at trial testified for the defense, denying that Flores attacked him and characterizing his injuries as "minor" and his wounds "superficial." At the same time, he conceded during cross-examination that prisoners who cooperate with or testify for the government are at risk of being assaulted or killed. The jury convicted Flores. Over Flores's

objection, the district court imposed a five-level sentencing enhancement because the victim suffered "serious bodily injury," and sentenced Flores to 110 months.  Flores timely appeals.

## ANALYSIS

We review de novo a district court's legal interpretation of the Sentencing Guidelines, and we review for clear error a district court's factual conclusions.  *United States v. Thomas*, 933 F.3d 605, 608 (6th Cir. 2019).  As thoughtfully explained in *Thomas*, there appears to be some debate over whether we employ clear error or de novo review when it comes to reviewing a district court's *application* of the Sentencing Guidelines to the facts.  *Id*. at 608–10 (discussing the "broad disagreement" in our Circuit and others over the applicable standard of review).  *Thomas* ultimately left reconciling these conflicting standards for another day, as Thomas's appeal failed under even the more favorable de novo standard.  So too here.  Flores's challenge to the "serious bodily injury" enhancement similarly fails under either standard.  *Id*. at 610; *United States v. Parsons*, 798 F. App'x 922, 927 (6th Cir. 2020) (not reaching the legal standard because the district court did not err in applying the Sentencing Guidelines).

We start, as always, with the Guideline's text.  Section 2A2.2(b)(3)(B) instructs district courts to apply a five-level enhancement to aggravated assault convictions if the assault caused "serious bodily injury."  U.S.S.G. § 2A2.2(b)(3)(B).  The commentary to § 2A2.2 explains that the definition of "serious bodily injury" is found in the application note to § 1B1.1.  U.S.S.G. § 2A2.2 cmt. n.1.  That application note in turn defines "serious bodily injury" as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation," U.S.S.G. § 1B1.1 cmt. n.1, a definition that accords with dictionary definitions of the term "serious" as used in the context of an injury.  *Serious*, Oxford English Dictionary (Online Ed. 2020) ("Of an injury, condition, etc.: significant or worrying; giving cause for anxiety or concern; grave, threatening, or dangerous."); *Serious*, Merriam-Webster (Online Ed. 2020) ("[H]aving important or dangerous possible consequences . . . a *serious* injury.").

Seeing no inconsistency between the commentary and the Guideline it interprets, we apply the commentary's interpretation of the Guideline. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.) (en banc) (per curiam), *reconsideration denied*, 929 F.3d 317 (6th Cir. 2019). Adhering to that definition, we ask whether Flores caused the victim extreme pain, protracted impairment of a body part, or conditions requiring medical intervention. U.S.S.G. § 1B1.1 cmt. n.1. And as this definition uses the disjunctive "or," the Guideline applies where the victim suffered any one of these ailments. *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) (holding that a Fair Labor Standards Act exemption applied to each listed activity in a provision individually where the activities were joined in the list by "or"); *see also* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 116–19 (2012) (explaining that when a prohibition uses a disjunctive "or," "none of the listed things is allowed").

*Extreme Pain*. As the district court aptly noted, "common sense" strongly suggests that one who is repeatedly stabbed and suffers deep stab wounds would typically experience a large amount of pain. Corroborating that common sense understanding here is eyewitness testimony. A prison guard testified that following the stabbing, the victim was shouting for help, appeared to be in "a lot of pain," and declared his death as imminent. Further confirming the victim's significant level of pain, he was prescribed two narcotics for pain management during his ensuing hospital stay. Throughout the ordeal, the victim indicated that his pain levels were on average at 7 out of 10, with a high of 8. To be sure, the reliability of this last metric may suffer from the fact that individuals, depending upon their experiences and disposition, may disagree over what level of pain amounts to a "10." But taking all of these indicators together, it is more than fair to say that the victim experienced "extreme pain" as a result of Flores's assault, thereby justifying the sentencing enhancement.

*Medical Intervention*. The victim's need for significant medical intervention independently supports imposition of the § 2A2.2(b)(3)(B) enhancement. The victim required numerous sutures to close his stab wounds and treat his extensive blood loss, including a series of two-layered sutures underneath his skin. That level of manipulation and mending reasonably qualifies as "surgery," one of the illustrative conditions sufficient to satisfy the "serious bodily injury" benchmark for imposing the enhancement. U.S.S.G. § 1B1.1 cmt. n.1 (defining "serious

injury" as, among other things, "injury . . . requiring medical intervention such as surgery"); *Suture*, Oxford English Dictionary (Online Ed. 2020) ("*Surgery*. The joining of the lips of a wound . . . by stitches . . . ."). And this conclusion, it bears noting, accords with our interpretation of the "serious bodily injury" enhancement for robbery offenses, *see* U.S.S.G. § 2B3.1(b)(3), as well as the Ninth Circuit's interpretation of the enhancement in the same aggravated assault setting. *See United States v. Clay*, 90 F. App'x 931, 933 (6th Cir. 2004) ("Mr. Lamar was taken to a hospital because his injuries required medical intervention in the form of sutures. Medical intervention of this type qualifies Mr. Lamar's injuries as serious under § 1B1."); *United States v. Corbin*, 972 F.2d 271, 272 (9th Cir. 1992) (describing argument that two-layer suture closure was not surgery as "simply lack[ing] merit" and upholding § 2A2.2(b)(3)(B) enhancement); *see also United States v. Le*, 178 F. App'x 386, 388 (5th Cir. 2006) (upholding serious bodily injury enhancement where stabbing victim lost a "great deal" of blood, experienced extreme pain, and required two-layer sutures to close wounds).

Resisting this outcome, Flores contests the district court's decision to discount the victim's testimony supporting Flores. That the victim did not appear on behalf of the government was curious, to say the least. So too was his ensuing testimony. For instance, the victim denied Flores was the attacker in the face of contradictory video footage and eyewitness accounts. And he denied he was bleeding through his clothes following the assault in the face of graphic photos revealing otherwise. Perhaps, as the government suggests, the victim's testimony can be explained by a fear of retaliation or other concerns. Either way, in light of a mountain of contradictory evidence, the district court did not err in giving that testimony little weight, and in ultimately applying the enhancement.

## CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.