# United States Court of Appeals
## For the First Circuit

No. 17-1350

UNITED STATES OF AMERICA,

Appellee,

v.

WILLIAM PINET-FUENTES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Thompson, Boudin, and Kayatta,
Circuit Judges.

Javier A. Morales-Ramos, on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney,
Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief,
Appellate Division, and John A. Mathews II, Assistant United States
Attorney, on brief for appellee.

April 30, 2018

**BOUDIN**, **Circuit Judge**.  William Pinet-Fuentes (Pinet) pled guilty in the district court to a charge of illegal possession of a machine gun, 18 U.S.C. § 922(o), and was sentenced to 30 months in prison to be followed by supervisory release; a further condition prescribed by the court was that for the first half year, Pinet would be subject to electronic monitoring and curfew restrictions.  Pinet's appeal contests both the 30-month sentence and the release conditions.

Pinet was arrested on September 6, 2016, following an earlier incident in Yabucoa, Puerto Rico.  Pinet sat in a front passenger seat of a car parked at an abandoned gas station at some distance from the drug transaction that agents perceived him to be observing.  After a pat down of Pinet revealed that he had two ammunition magazines in his pocket, he admitted to having a weapon under the seat; it was a loaded Glock, with an extended magazine, and was fully automatic.  Pinet later conceded that his weapon had earlier been in his lap and was placed under the seat as agents approached the car.

Section 922(o) makes it unlawful for any person to possess a "machinegun," with exceptions, such as military and police, which do not apply to Pinet. "Machinegun," defined through cross-references, is not limited to the popular conception portrayed in movies, but effectively includes any weapon, including a Glock, capable of fully automatic fire.  See 18 U.S.C.

§ 922(a)(4) (noting that machinegun is defined in 26 U.S.C. § 5845).

After Pinet pled guilty, the Probation Officer filed a pre-sentence report. The ultimate recommended calculation of Pinet's sentencing range under the guidelines included an upward adjustment on the premise that the Glock was a stolen firearm. U.S.S.G. § 2K2.1(b)(4)(A). Pinet disputed the upward adjustment at the sentencing hearing, as well as the report's recommendation that for the first six months of supervised release, he be required to abide by a curfew and submit to electronic monitoring.

At sentencing, the district court adopted, over Pinet's objections, both the stolen weapon enhancement and the recommended conditions as to curfew and monitoring. The district court also imposed the 30-month sentence which was within the range recommended in the pre-sentence report. The enhancement, the sentence itself, and the supervised release conditions are all issues pressed on this appeal. We take them in that order.

Under the sentencing guidelines, much in the sentence depends on the score or "level" assigned to the defendant. The level is to be adjusted upward by two levels if the defendant's firearm was stolen. U.S.S.G. § 2K2.1(b)(4)(A). The district court makes findings as to such matters under a preponderance of the evidence standard by which the government must establish the enhancement; but the district court is not limited by conventional

jury trial evidence rules and--pertinent here--may consider reliable hearsay not within some settled exception. United States v. Rodriguez, 336 F.3d 67, 71 (1st Cir. 2003).

The government offered as evidence a police report, recounting an interview with the original owner, stating that the weapon had been stolen from his vehicle in January 2015 while he was at church. Pinet had previously claimed that he had bought the gun several years prior to the owner's reported loss of it to theft. The district court accepted the owner's version of events--no motive for him to lie was apparent--while Pinet's self-serving explanation was convenient but not supported by any other evidence.

For the owner to lie to a police officer would have been unwise and, so far as we can tell, Pinet gave no specifics to support his own version of events. He says that the owner's claim that he drove the gun to church is unlikely, but, based on our frequent review of cases out of Puerto Rico, it is fair to say guns are common enough. As between the owner's unimpeached statement and the story told by a defendant with an obvious motive to fabricate, the district court could choose to credit the owner. This disposes of Pinet's enhancement claim without the need to consider the government's further arguments on this issue.

Turning to Pinet's attack on the reasonableness of the sentence, the guideline range--given Pinet's offense level and criminal history--was 24-30 months' imprisonment. Pinet claims

that the district court either did or may well have relied on an inference that Pinet, sitting in a vehicle cradling an automatic weapon and looking toward the scene of a drug transaction, was a party to the transaction. The government concedes that it lacked evidence to convict Pinet for the drug transaction.

Where there is a controverted matter during sentencing, the district court is required to rule or find that the matter will not affect sentencing. Fed. R. Crim. P. 32(i)(3)(B). Here, the government said that it could not prove Pinet was involved in the transaction beyond a reasonable doubt but said that the evidence was enough for the judge to find that his involvement was proved by a preponderance of the evidence. In substance, the court resolved the matter favorably to Pinet, albeit by indirection.

When defense counsel pressed the issue, saying it would be improper for the court to accept that Pinet was part of the conspiracy being witnessed, the judge replied that he was merely describing the government's allegation. Counsel replied, "Well as long as it's an allegation, and I understand that you will not take it into consideration, that will be fine." The judge then said, "Anything else?" and moved on.

It is enough to say that the judge appeared to accept defense counsel's solution; counsel made no further protest; and nothing said afterwards by the judge suggests that he did hold Pinet responsible for a new and separate crime. As it happens,

the judge could have ruled that Pinet was responsible for this second crime and relied directly on it in fashioning the sentence. But the judge in this case sensibly left defense counsel's proposed resolution to stand, making the dispute one that "will not affect the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). That answers this claim now made on appeal.

Pinet's final challenge is to the conditions governing the first six months of the three-year period of supervised release. The evident purpose was to limit during a test period Pinet's freedom of action and provide authorities with a chance to see whether Pinet was adapting to his new situation, obeying standard supervisory release conditions and staying out of trouble. The district court did not need to describe the obvious steps in its thinking process. United States v. Colón de Jesús, 831 F.3d 39, 44 (1st Cir. 2016). Here, the district court's reasoning is inferable from the record. See id. at 44-45 ("[A]n unexplained condition of supervised release may be upheld as long as the basis for the condition can be inferred from the record." (citing United States v. Garrasteguy, 559 F.3d 34, 42 (1st Cir. 2009))).

The district court enjoys wide discretion in setting conditions for supervised release especially where public safety may be at risk. United States v. Smith, 436 F.3d 307, 311-12 (1st Cir. 2006). Even where a defendant's challenge is preserved at

trial, a reviewing court commonly defers to the trial judge who is likely to be familiar with the defendant.  Here the question is whether the conditions were an abuse of discretion,  United States v. Perazza-Mercado, 553 F.3d 65, 69 (1st Cir. 2009)(citing United States v. York, 357 F.3d 14, 19 (1st Cir. 2004)), and we conclude that no such abuse occurred.

Nothing prevents Pinet after some experience with the conditions from seeking their adjustment if he can show that the conditions are a serious impingement on his ability to get and keep a job or in other respects impose an unreasonable burden.

The judgment of the district court is affirmed.