RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0254p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

　　　　　　　　　*Plaintiff-Appellee,*

　　*v.*

JONATHAN-MICHAEL BROWN,

　　　　　　　　　*Defendant-Appellant.*

No. 23-1212

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:22-cr-00080-1—Jane M. Beckering, District Judge.

Decided and Filed:  November 22, 2023

Before:  SILER, THAPAR, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Geoffrey Upshaw, Grand Rapids, Michigan, for Appellant.  Andrew Byerly Birge, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

─────────────────

## OPINION

─────────────────

THAPAR, Circuit Judge.  After using a false ID to buy twenty-five firearms, Jonathan-Michael Brown pled guilty to several fraud offenses.  The district court enhanced Brown's sentence because he had a stolen gun when police arrested him.  Brown argues that the stolen gun wasn't relevant to his sentencing.  But because Brown possessed twenty-five other stolen firearms—those he fraudulently purchased—we affirm.

I.

Jonathan-Michael Brown created a driver's license with his photo and someone else's identity. He also made credit cards using that identity, pulling account numbers from the dark web. Then, over the span of two months, Brown used those fraudulent documents to purchase twenty-five firearms, which he ultimately sold.

Brown's fortunes soon changed. As he'd done before, Brown walked into a gun store, picked out a firearm, and presented a fraudulent license and credit card. This time, however, a store employee recognized Brown from a prior incident and called the police.

As police arrived, Brown drove away in a rented U-Haul. Officers followed Brown and conducted a traffic stop. During the stop, they found Brown's fraudulent license and five false credit cards in a wallet on the passenger seat. Officers also found between the front seats a gun that had been reported stolen a year and a half earlier. They arrested Brown.

After being arrested, Brown recruited a friend to continue his scheme. He created false credit cards and gave them to his friend. The friend used those cards to purchase thirty-nine firearms. In total, Brown and his friend fraudulently purchased $56,000 in guns over three months.

Eventually, Brown pled guilty to aggravated identity theft, using a false ID during the purchase of a firearm, and conspiracy to commit wire fraud. *See* 18 U.S.C. §§ 922(a)(6), 1028A(a)(1), 1343, 1349. The district court enhanced Brown's sentencing range because Brown had a stolen firearm in the U-Haul when police arrested him. *See* U.S.S.G. § 2K2.1(b)(4)(A). The court then sentenced Brown to 120 months' imprisonment. Brown appeals.

II.

The Sentencing Guidelines instruct courts to enhance a defendant's sentencing range if the defendant "possessed" a "stolen" firearm. *Id.* (cleaned up). Brown argues the district court should not have relied on the gun in the U-Haul to apply this enhancement. Specifically, Brown argues he didn't know the gun was in the U-Haul, so he couldn't have possessed it. Brown also

argues the U-Haul gun wasn't relevant to his sentencing because it wasn't fraudulently purchased. *See id.* § 1B1.3(a)(2).

But the enhancement applies regardless of the gun in the U-Haul. *See United States v. Davist*, 481 F.3d 425, 427 (6th Cir. 2007) (noting we can affirm on any grounds supported by the record). The enhancement applies if "any" firearm Brown possessed during his criminal conduct was "stolen." U.S.S.G. § 2K2.1(b)(4)(A). The Guidelines don't define "stolen," and we've held that the word isn't a legal term of art. *United States v. Jackson*, 401 F.3d 747, 749 (6th Cir. 2005) (citation omitted). So, we interpret "stolen" as an ordinary English speaker would. *Moskal v. United States*, 498 U.S. 103, 108, 114–15 (1990). And three clues suggest that the ordinary meaning of "stolen" covers Brown's fraudulently purchased firearms.

First, dictionaries define "steal" as "[t]o take dishonestly or secretly." *Steal*, Oxford English Dictionary (2d ed. 1989); *see also Steal*, World Book Dictionary (1985) ("to . . . take dishonestly"). Using a false license and credit card to buy a gun is dishonest. Indeed, multiple dictionaries list fraud as an example of "stealing." *E.g.*, *Steal*, Black's Law Dictionary (11th ed. 2019) ("To take . . . by larceny, embezzlement, or false pretenses"); *Theft*, Webster's Third International Dictionary (1961) (taking property "as by robbery, embezzlement, [or] fraud"); *see also Steal*, Webster's Third International Dictionary (1961) (equating "steal[ing]" with theft).

Second, other provisions in the Guidelines use "stolen" to refer to fraudulently acquired property. For example, one provision enhances the sentencing range for defendants who use a false ID to acquire other IDs. U.S.S.G. § 2B1.1(b)(11)(C). The Guidelines commentary describes those secondary IDs—which are acquired in the same way as Brown's firearms—as "stolen." *Id.* cmt. background. Similarly, we have suggested that an enhancement for receiving "stolen property" would apply to a defendant who receives credit card information that was fraudulently acquired. *See United States v. Nicolescu*, 17 F.4th 706, 713, 721–23 (6th Cir. 2021) (quoting U.S.S.G. § 2B1.1(b)(4)).

Several federal statutes also treat fraudulent purchases as "stolen." *Jackson*, 401 F.3d at 749–50 (collecting cases); *United States v. Turley*, 352 U.S. 407, 417 (1957) (discussing 18 U.S.C. § 2312); *United States v. Natour*, 700 F.3d 962, 971–74 (7th Cir. 2012) (discussing 18

U.S.C. § 2314); *Boone v. United States*, 235 F.2d 939, 941 (4th Cir. 1956) (discussing 18 U.S.C. § 659).   The Motor Vehicle Theft Act, for example, prohibits the transportation of stolen vehicles.   18 U.S.C. § 2312.   In the context of that Act, the Supreme Court has interpreted "stolen" to cover "all felonious takings . . . with intent to deprive the owner of the rights and benefits of ownership." *Turley*, 352 U.S. at 417.   That includes fraudulent purchases. *See id.* at 416.

Of course, it's possible "stolen" means something narrower in the stolen-firearm enhancement than in these other provisions. *See, e.g.*, *Gustafson v. Alloyd Co.*, 513 U.S. 561, 588–89 (1995) (Thomas, J., dissenting).   But unless context indicates otherwise, we presume that when laws use the same term to address the same subject matter, they use the term consistently. *United States v. Richardson*, 948 F.3d 733, 750 (6th Cir. 2020); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170–72 (2012).   Indeed, it would be difficult for ordinary citizens and government to effectively communicate if laws didn't use terms consistently.   And the stolen-firearm enhancement uses "stolen" in the same way as these provisions:  as an adjective modifying personal property in the context of a criminal prohibition or sentencing enhancement.   *Compare* U.S.S.G. § 2K2.1(b)(4)(A), *with, e.g.*, *id.* § 2B1.1(b)(11)(C) & cmt. background, *and id.* § 2B1.1(b)(4).   Thus, it makes sense that the stolen-firearm enhancement uses "stolen" like the other provisions—to include fraudulent purchases.

Third, the Guidelines' historical context confirms this conclusion.   Historically, common law distinguished theft without consent (larceny) and theft where consent was fraudulently induced (theft by false pretenses).   2 Wharton's Criminal Law § 26:2 (16th ed.).   But in the decades leading up to the publication of the Guidelines, Congress and the states began treating theft offenses as a single crime. *E.g.*, Model Penal Code § 223.1.   Laws used the term "stolen" to implement this trend, using the term to refer to all theft offenses collectively.   E. Mike Miller & Donald E. Wintrode, *New Approach to Old Crimes: The Model Penal Code*, 39 Notre Dame L. Rev. 310, 323–24 (1964); *Turley*, 352 U.S. at 411 (noting "stolen" "became the generic designation for dishonest acquisition" (quotation omitted)); *see also* 2 Wharton's Criminal Law § 30:12 (16th ed.) ("Property is deemed 'stolen' not only when the underlying offense constitutes

larceny or robbery, but also when it constitutes embezzlement or obtaining property by false pretenses." (footnote omitted)).

The Guidelines were written against the background of this trend.  They also embody the trend, applying the same sentencing range to "larceny, embezzlement, and other forms of theft." U.S.S.G. § 2B1.1 (cleaned up).  Thus, it would be odd for the Guidelines to use "stolen" to refer to some forms of theft, but not fraudulent purchases.  *See Jackson*, 401 F.3d at 748 (noting "stolen firearm[s]" isn't limited to common-law larceny).  Other circuits agree, interpreting the stolen-firearm enhancement to cover any felonious theft offense.  *United States v. Colby*, 882 F.3d 267, 272 (1st Cir. 2018); *United States v. Lavalais*, 960 F.3d 180, 188 (5th Cir. 2020); *United States v. Bates*, 584 F.3d 1105, 1109 (8th Cir. 2009); *United States v. Rowlett*, 23 F.3d 300, 303–04 (10th Cir. 1994), *overruled on other grounds*, *United States v. Goff*, 314 F.3d 1248, 1249 (10th Cir. 2003).

In sum, fraudulently purchased firearms are "stolen" for purposes of the stolen-firearm enhancement.  Brown doesn't raise any argument to the contrary on appeal.[1]  Because Brown fraudulently purchased twenty-five firearms, the district court properly applied the enhancement.

We affirm.

---

[1]Before the district court, Brown argued the stolen-firearm enhancement shouldn't apply because his offense of conviction—displaying a fraudulent ID during a firearm purchase—already accounts for the fact that the guns were stolen.  But Brown doesn't raise this point on appeal, so it's forfeited. *Glennborough Homeowners Ass'n v. USPS*, 21 F.4th 410, 414 (6th Cir. 2021).  In any case, Brown was convicted for displaying a fraudulent ID during only two of his firearm purchases.  So, his offense of conviction doesn't account for the twenty-three other guns he stole.  Moreover, the enhancement and Brown's offense of conviction account for different aspects of Brown's conduct. *See United States v. Hitch*, 58 F.4th 262, 264 (6th Cir. 2023).  The enhancement accounts for the fact Brown "possessed a stolen gun," while his offense accounts for the fact that "[Brown] himself had stolen the gun" through fraudulent means. *Id.* (cleaned up).