NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0484n.06

No. 24-5256

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 03, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| BRYAN THOMAS CARROLL, | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |
| | ) | |

Before: BATCHELDER, MOORE, and BUSH, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** University of Kentucky Police arrested Bryan Carroll, an individual for whom there was an active arrest warrant at the time, outside the University of Kentucky Hospital. After apprehending Carroll and finding two firearms on his person, police searched his car, where they found six more firearms, including a Glock pistol that had been reported stolen several years prior. Carroll ultimately waived indictment and pleaded guilty to multiple firearms charges. At Carroll's sentencing, the district court applied a two-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(4)(A) on the basis that one of the firearms that had been in Carroll's possession—the Glock pistol—was stolen. On appeal, Carroll challenges the application of this enhancement, arguing that the district court clearly erred in determining that the firearm had been stolen.

Because the district court did not clearly err in determining that the relevant firearm was stolen, we **AFFIRM**.

## I. FACTUAL BACKGROUND

### A. Carroll's Arrest

On March 25, 2021, the Versailles Police Department learned that Bryan Carroll, the subject of an active arrest warrant, was enroute to the University of Kentucky Hospital. R. 23 (PSR at ¶ 7) (Page ID #113). They notified University of Kentucky Police (UKPD), who encountered Carroll outside the hospital's Emergency Department. *Id.* Carroll was wearing a ballistic vest and had two firearms on his person, and he initially attempted to flee. *Id.* Officers ultimately apprehended Carroll and conducted a search of his car, where they found six additional firearms, one of which was an unregistered sawed-off shotgun. *Id.* at ¶ 9, 9(4) (Page ID #113–114); ¶ 19 (Page ID #116). Another was a Glock pistol that had been reported stolen several years earlier on July 4, 2018. *Id.* at ¶¶ 9(5), 10 (Page ID #114).

Law enforcement traced the Glock back to its original owner, who stated that he had reported the firearm stolen after leaving it in a rental car and unsuccessfully searching for it for three days. *Id.* at ¶ 10 (Page ID #114); *id.* at 25 (Page ID #141) (Defendant's Objections to PSR). Until the discovery of the Glock in Carroll's car on the day of his arrest, the firearm had never been recovered. *Id.*

Pursuant to their search of Carroll's car, police also found four improvised explosive devices and a homemade bomb. *Id.* at ¶ 11 (Page ID #114). After obtaining a search warrant for Carroll's home, police found two additional firearms, a large quantity of explosive materials, and homemade explosive devices. *Id.* at ¶ 15, 16 (Page ID #115–16).

2

**B. The Proceedings Below**

Carroll waived indictment and pleaded guilty to possessing a firearm after being convicted of a felony offense in violation of 18 U.S.C. § 922(g)(1), carrying an explosive device during the commission of a federal felony offense in violation of 18 U.S.C. § 844(h)(2), and possessing an unregistered firearm (the sawed-off shotgun) in violation of 26 U.S.C. § 5861(d). R. 6 (Information at 1–4) (Page ID #25–28), R. 7 (Minute Entry of Plea at 1) (Page ID #31), R. 8 (Waiver of Indictment at 1) (Page ID #33).

Prior to Carroll's sentencing on these charges, the Probation Office submitted a Presentence Investigation Report (PSR) calculating Carroll's total offense level as 23 with a criminal history category of V. R. 23 (PSR at ¶¶ 35, 63) (Page ID #118, 124). The calculated offense level included a two-level increase for the possession of a stolen firearm pursuant to U.S.S.G. § 2K2.1(b)(4)(A). *Id.* at ¶ 28 (Page ID #117). Probation recommended a Guidelines range of 204 to 225 months of imprisonment. *Id.* at ¶ 89 (Page ID #130).

At sentencing, Carroll objected to the two-level stolen-firearm enhancement, arguing that there was insufficient evidence to show that the Glock pistol had been stolen. R. 11 (Objection to PSR at 2–4) (Page ID #52–54), R. 30 (Sent'g Tr. at 25–36) (Page ID #185–96). The government, bearing the burden of proving the applicability of the enhancement by a preponderance of the evidence, called Agent Christopher Knotts of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to testify to the stolen nature of the Glock. R. 30 (Sent'g Tr. at 4) (Page ID #164). Officer Knotts testified that, following Carroll's arrest, Knotts had traced the firearm back to its original owner, who advised Knotts that the firearm had been stolen out of a rental car on July 1, 2018. *Id.* at 7–9 (Page ID #167–69). The gun's owner told Knotts that he had filed a police

report three days later, on July 4, after realizing that he had left the Glock in the rental car, searching for it, and calling the rental company to see if they had located it. *Id.* at 9–10 (Page ID #169–70). Once reported stolen, the firearm was entered into the National Crime Information Center (NCIC), an FBI-administered database containing information on stolen firearms. *Id.* at 8 (Page ID #168). The gun's owner at no point regained possession of the firearm after reporting it stolen. *Id.* at 10 (Page ID #170).

After presenting Officer Knotts's testimony, the government argued that, because the gun's original owner had reported it stolen and had never recovered it, the gun was considered stolen at the time that Carroll possessed it. *Id.* at 23 (Page ID #183). The government further argued that, even if the firearm was initially mislaid, it was ultimately taken by someone who had no right to possess it. *Id.* In short, the government argued, "[t]here's no . . . legal defense based on finders keepers." *Id.* at 24 (Page ID #184).

In response, Carroll argued that the available evidence instead indicated that the firearm had been lost or mislaid. *Id.* at 28–29 (Page ID #188–89). According to Carroll, the government had not presented enough evidence of the original gun owner's efforts to look for it after he realized that he had left it in the rental car, such that the government had failed to carry its burden of demonstrating that the gun had been stolen from the rental car. *Id.* at 30 (Page ID #190). Additionally, Carroll argued, the government had failed to present any evidence of Carroll's dishonesty in obtaining the firearm, an element of theft that Carroll argued was necessary to any finding that the gun was stolen. *Id.* at 30–31 (Page ID #190–91).

Upon considering the evidence and both parties' arguments, the district court found Agent Knotts's testimony to be credible and credited the original gun-owner's apparent belief that the

gun had been stolen from his rental car. *Id.* at 35 (Page ID #195). The district court then found that "the evidence does more than establish by a preponderance that the firearm was stolen." *Id.* Applying the two-level enhancement, *id.* at 36 (Page ID #196), the district court sentenced Carroll to a below-Guidelines sentence of 180 months of imprisonment. *Id.* at 76 (Page ID #236); R. 19 (Sent'g J. at 2) (Page ID #92). Carroll timely filed a notice of appeal. R. 20 (Notice of Appeal at 1) (Page ID #98).

## II. DISCUSSION

### A. Standard of Review

Carroll raises only one issue on appeal: whether the district court inappropriately applied a two-level sentencing enhancement for possessing a stolen firearm pursuant to U.S.S.G. § 2K2.1(b)(4)(A). "[W]e review the factual determinations underpinning the application of a[] [sentencing] enhancement for clear error." *United States v. Tripplet*, 112 F.4th 428, 432 (6th Cir. 2024). "A district court's factual finding is 'clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that the district court made a mistake.'" *United States v. Histed*, 93 F.4th 948, 954 (6th Cir. 2024) (quoting *United States v. Ellis*, 938 F.3d 757, 761 (6th Cir. 2019)).

### B. The Stolen-Firearm Enhancement

The United States Sentencing Guidelines (the Guidelines) instruct a district court to increase a defendant's offense level by two levels if "any firearm was stolen." U.S.S.G. § 2K2.1(b)(4)(A). Because the Guidelines do not define the term "stolen," and because the word is not a legal term of art, "we interpret 'stolen' as an ordinary English speaker would."

5

*United States v. Brown*, 86 F.4th 1164, 1166 (6th Cir. 2023) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)).

Carroll argues that the district court clearly erred in finding that the firearm was stolen because the government failed to present any evidence of Carroll's fraud, deceit, or dishonesty in obtaining the gun. Appellant Br. at 9. This argument stems from our opinion in *Brown*, in which we held that the stolen-firearm enhancement applied to a defendant's sentence where the defendant had used a false ID during the purchase of a firearm. 86 F.4th at 1166. In that case, we held that, even though Brown had purchased a firearm from a gun store and therefore had not "stolen" the firearm in the traditional sense, the firearm was nevertheless stolen, for the purpose of the enhancement, because Brown had purchased it with a fraudulent credit card and photo ID and had therefore acquired it dishonestly. *Id.* In so holding, we looked to the dictionary definition of the word "steal," other provisions of the guidelines and other federal statutes, and historical context to determine that the word "stolen" applies to fraudulently acquired property. *Id.* at 1166–67.

According to Carroll, our holding in *Brown* created a requirement that the government make some showing of dishonesty or fraud on the part of the defendant in order for the stolen-firearm enhancement to apply. Appellant Br. at 9–10. This is not correct. Our decision in *Brown* merely clarified that the definition of "stolen," at least for the purpose of the stolen-firearm enhancement, extends beyond the traditional definition of stealing—i.e., the physical taking of another's property—and into other forms of fraudulent acquisition of property. 86 F.4th at 1167. *Brown* did not create any new evidentiary requirement. Critically, "§ 2K2.1(b)(4)(A) contains no scienter requirement"; that is, "the enhancement 'applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen.'" *United States v. Gibson*, 817 F. App'x 202,

203–04 (6th Cir. 2020) (quoting § 2K2.1(b)(4)(A), cmt. n.8(B)); *see also United States v. Palos*, 978 F.3d 373, 375–78 (6th Cir. 2020) (adopting *Gibson*'s rule). Carroll conceded this point before the district court. R. 20 (PSR Objections) (Page ID #134) ("[W]e fully acknowledge that the Guideline provision is a 'strict liability' provision, which means that it may be applied even if the defendant did not know or have any reason to know that it was stolen."). A defendant's knowledge regarding the stolen nature of the firearm in their possession is therefore irrelevant for the purpose of the enhancement. And if the government need not show that a defendant knew the firearm was stolen, it also need not show that the defendant acquired the relevant firearm by fraudulent or dishonest means. The only showing that the government must make is that the firearm was in fact stolen when it was found in the defendant's possession.

This case involves a quintessential example of "stealing." The Glock belonged to an individual, who then left it in the side door of a rental vehicle. R. 30 (Sent'g Tr. at 9–10) (Page ID #169–70). Someone—no one knows who—took the firearm from the rental vehicle. The firearm did not belong to that person.[1] Nor did the firearm belong to Carroll when it, somehow, arrived in his possession. Regardless of who misappropriated the firearm in the first place, it was dispossessed from its owner and remained so when it was found in Carroll's possession. The district court therefore did not commit a clear error when it determined by a preponderance of the evidence that the firearm—one that did not lawfully belong to Carroll and had at some point been unlawfully misappropriated from its lawful owner—was stolen.

---

[1]At Carroll's sentencing, Agent Knotts specifically testified that the firearm's original owner had at no point given permission to anyone to take the firearm from him, whether that be an employee of the rental car company, another renter of a vehicle, or any other person. R. 30 (Sent'g Tr. at 21) (Page ID #181).

In the alternative, Carroll argues that the district court clearly erred in determining that the Glock was stolen because the available evidence left open the possibility that the original owner had lost or mislaid it.[2]  Appellant Br. at 11–12.  But Carroll offers no legal authority for the proposition that a firearm that is lost or mislaid cannot thereafter be stolen.  On the contrary, when the Glock's original owner left the gun in his rental vehicle, it did not thereupon become unowned property free to be acquired by another.  In making its case that the gun was stolen, the government did not dispute that its owner lost the gun for a period of time; instead, it argued that it was more likely than not that someone stole the gun from the rental vehicle between the time that the owner mislaid it and when he returned to the rental vehicle and found the Glock missing.  R. 30 (Sent'g Tr. at 23–24) (Page ID #183–84).  That the district court found the firearm to be stolen, despite evidence that its original owner had mislaid it for a few days, was not clear error.

In arguing that the Glock was stolen, the government, at Carroll's sentencing, relied in large part on the Eighth Circuit's decision in *United States v. Bates*, 584 F.3d 1105 (8th Cir. 2009). *See* R. 30 (Sent'g Tr. at 24–25) (Page ID #184–85).  There, in making its case that the stolen-firearm enhancement should apply to Bates's sentence, the government called as a witness at sentencing the stolen firearm's original owner, who testified that he had accidentally left his firearm in the restroom of a bar, realized it was missing after a couple of days, and called the bar to see if anyone had located it (but no one had). *Bates*, 584 F.3d at 1107.  The owner did not report

---

[2]Carroll also argues on appeal that "it remains just as likely that [the gun's original owner] lost or even lied about the loss of his weapon as it is that it was stolen."  Appellant Br. at 11–12.  But the district court considered these alternative explanations at Carroll's sentencing and specifically rejected them as less likely than the explanation that, per the owner's police report, the gun had been stolen.  R. 30 (Sent'g Tr. at 35) (Page ID #195).  And despite Carroll's argument that the evidence could have supported a different factual finding, "where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

the firearm as stolen to the police, and it was later found in Bates's vehicle following his arrest. *Id.* The district court credited the original owner's testimony that he had mislaid the firearm and found that, because there was no evidence that the owner had given or sold the firearm to Bates, it was more likely than not that it had been stolen. *Id.* at 1108. On appeal, the Eighth Circuit upheld the district court's application of the enhancement, holding that, even though "no one [knew] exactly when, where, or under what circumstances the gun went missing," "the evidence adequately support[ed] the district court's finding that the firearm was stolen." *Id.* at 1109.

Although *Bates* is not binding on this court, it is nevertheless instructive. The facts of *Bates* closely mirror the facts presented in this case. Here as in *Bates*, the firearm's original owner left the firearm in a specific location and realized, within a few days, that it was missing. And as in *Bates*, upon realizing that the firearm was missing, the original owner searched for it, eventually concluding that it had been stolen. In the instant case, the firearm's original owner went even further, reporting the Glock as stolen to police.

Carroll argues that *Bates* is distinguishable from the case at bar because, unlike in *Bates*, here the firearm's original owner was not called to testify at Carroll's sentencing to the fact that his firearm had been stolen. Appellant Br. at 11. But the government called a witness to testify as to the stolen nature of the firearm: ATF Agent Christopher Knotts. And while Agent Knotts's testimony regarding the contents of the original owner's police report contained hearsay, a district court may "rely on hearsay for the factfinding part of a sentencing decision." *United States v. Armstrong*, 920 F.3d 395, 398 (6th Cir. 2019).[3] The district court determined that Agent Knotts

---

[3]"The information used need only have a 'sufficient indicia of reliability to support its probable accuracy.'" *United States v. Jones*, 815 F. App'x 870, 876 (6th Cir. 2020) (quoting U.S.S.G. § 6A1.3(a)). "In other words, that information considered must have '*some* evidentiary basis' that satisfies that 'minimal . . . reliability' threshold." *Id.* (quoting *Armstrong*, 920 F.3d at 398).

was credible, as was his testimony regarding the police report made by the Glock's original owner. Regardless of whether Carroll agrees with that credibility determination, it is "'basically unassailable' on appeal." *United States v. Greco*, 734 F.3d 441, 446 (6th Cir. 2013) (quoting *United States v. Maliszewski*, 161 F.3d 992, 1020 (6th Cir. 1998)).

The district court, after considering all the available evidence, concluded that it was more likely than not that the Glock pistol found in Carroll's possession on the day of his arrest had been stolen from its original owner. R. 30 (Sent'g Tr. at 35) (Page ID #195). That factual conclusion was reasonable in light of the evidence that the firearm's original owner had left it in a rental car and reported it stolen when he realized it was missing; that the original owner had not lent, given, or sold the firearm to anyone else; and that, after it had been missing and reported stolen for several years, the firearm appeared in Carroll's possession. The district court's determination that the firearm was stolen was not clearly erroneous, and the district court properly applied the two-level stolen-firearm enhancement to compute Carroll's sentence.

### III.  CONCLUSION

The district court reasonably determined by a preponderance of the evidence that the Glock pistol found in Carroll's possession had been stolen from its original owner. That determination was not clearly erroneous. We therefore **AFFIRM**.