NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0237n.06

No. 23-1622

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
May 09, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| CURTIS EUGENE-DARNELL BLACK, | ) | |
| | ) | |
|     Defendant-Appellant. | ) | OPINION |

Before: GIBBONS, WHITE, and MURPHY, Circuit Judges.

The court delivered a PER CURIAM opinion. MURPHY, J., (pp. 10–13), delivered a separate opinion concurring in part and dissenting in part.

PER CURIAM. Curtis Black pleaded guilty to possessing a firearm as a felon. He raises two arguments on appeal. First, he asserts that the government wrongly prosecuted him for possessing a gun because he is not dangerous and cannot be disarmed under the Second Amendment. Second, he asserts that the district court wrongly increased his guidelines range using a stolen-firearm enhancement. We disagree with his first argument but not his second. We must review Black's as-applied constitutional challenge for plain error, and his criminal record reasonably allowed the district court to find him dangerous. But the district court clearly erred when it applied the stolen-firearm enhancement because it relied on quadruple hearsay in a police report. So we affirm the conviction but reverse the sentence and remand for resentencing.

I

On September 7, 2022, police officers were monitoring a high-crime gas station in Lansing, Michigan. The officers spotted two men who were each holding onto something in their right pockets as they walked to their vehicle. Believing that the men were armed, the officers followed their vehicle and approached the men after they parked. Black, one of the two men, ran away from the officers. As he tried to jump over a fence, he dropped a loaded Sig Sauer P250. The officers saw him drop the gun and successfully detained him soon after.

The government charged Black with possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). Black moved to dismiss the indictment on the ground that § 922(g)(1) violated the Second Amendment in all its applications. The district court rejected this facial challenge to the statute.

Black entered a conditional guilty plea. He admitted to knowingly possessing the gun in violation of § 922(g)(1). But he preserved his right to appeal the district court's denial of his motion to dismiss.

Before sentencing, a probation officer recommended that the district court increase Black's guidelines range on the ground that the Sig Sauer had been stolen. According to the probation officer, the police had spoken to the firearm's registered owner. The owner suggested that he had let a friend borrow the gun back in 2019 and had forgotten about it. In 2022, a relative of the friend told the owner that someone had stolen the gun. The owner claimed that he had not reported it stolen at the time that he spoke with the police because he had still been trying to track down all the information about the gun.

Black objected to this enhancement at sentencing, claiming that the record did not contain enough evidence that the gun had been stolen. The district court overruled his objection, reasoning

the owner had no reason to lie. This decision produced a guidelines range of 37 to 46 months' imprisonment. The court imposed a 42-month sentence.

II

On appeal, Black argues that the felon-in-possession statute violates the Second Amendment as applied to him and that the record does not contain enough evidence to justify the stolen-firearm enhancement. Although his constitutional challenge lacks merit, he correctly identifies problems with the sentencing enhancement.

*Constitutional Challenge*. Black first claims that § 922(g)(1) violates the "right of the people to keep and bear Arms" in the Second Amendment. U.S. Const. amend. II. Yet after Black entered his plea agreement, we rejected a facial challenge to § 922(g)(1) like the one that he raised in the district court. *See United States v. Williams*, 113 F.4th 637, 657, 662–63 (6th Cir. 2024). That said, we left open the possibility that § 922(g)(1) might violate the Second Amendment as applied to non-dangerous felons. *See id.* at 657–61. On appeal, then, Black transitions to arguing that the government could not constitutionally apply the statute to him.

The parties at first debate the standard of review that governs this as-applied claim. Black concedes he forfeited the claim by failing to raise it in the district court. He thus argues that we should review it for plain error. The government, by contrast, notes that the plea agreement made clear that Black gave up the right to raise "any affirmative defenses," including constitutional defenses, except for the facial challenge in his motion to dismiss. Plea Agreement, R.27, PageID 91. So it suggests that Black waived (and did not just forfeit) his as-applied claim. If so, this waiver would mean that we should not review the claim at all. *See United States v. Olano*, 507 U.S. 725, 733 (1993); *United States v. Montgomery*, 998 F.3d 693, 697 (6th Cir. 2021).

3

We need not resolve this debate because Black's claim fails even under plain-error review. To establish a plain error, Black must show (among other things) that the district court committed a "clear" error "under current law" when it enforced § 922(g)(1) against him despite the Second Amendment. *Olano*, 507 U.S. at 734 (citation omitted). And he cannot make this showing unless "binding case law" resolves this as-applied claim in his favor. *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015); *see United States v. Davis*, 970 F.3d 650, 661 (6th Cir. 2020).

Black has, however, identified no precedent clearly establishing that § 922(g)(1) violates the Second Amendment as applied to him. To the contrary, we have held that this statute comports with the Second Amendment "as applied to dangerous people." *Williams*, 113 F.4th at 662–63; *see also United States v. Rahimi*, 602 U.S. 680, 700 (2024). We have added that courts must consider all the facts, including "a defendant's entire criminal record," when deciding whether the defendant qualifies as the type of dangerous individual who can be disarmed under the Second Amendment. *Williams*, 113 F.4th at 659–60. And we have further clarified that defendants who have committed "violent crimes" presumptively will pose this type of danger. *Id.* at 658.

Applying this "fact-specific" test here, the district court would not have committed an obvious mistake by concluding that Black was dangerous. *Id.* at 660. After all, Black's record shows a history of violence dating to his youth. Among other crimes, he received a juvenile conviction for larceny after he punched a victim in the face and stole the victim's phone. Black was also found guilty of assaulting, resisting, and obstructing a police officer as a juvenile after a victim suggested that Black had "jumped" him. As an adult, Black had again pleaded guilty to assaulting, resisting, and obstructing a police officer. He had also been convicted of possessing a firearm and a short-barreled shotgun, which is "inherently dangerous and lacks usefulness except for violent and criminal purposes." *United States v. Smith*, 422 F.3d 715, 722 (8th Cir. 2005)

(cleaned up). No "binding" precedent holds that the Second Amendment bars the government from dispossessing someone with this record. *Al-Maliki*, 787 F.3d at 794. At best, this constitutional question is "subject to reasonable dispute," which forecloses relief under the plain-error standard. *See Puckett v. United States*, 556 U.S. 129, 135 (2009); *see also United States v. Hewlett*, 2024 WL 4564645, at *4 (6th Cir. Oct. 24, 2024).

In response, Black suggests that his larceny conviction arose from a "schoolyard bullying incident" when he was 15 years old. Reply Br. 10. He also suggests that his juvenile conviction for assaulting, resisting, or obstructing a police officer arose from his mere decision to "walk[] away from law enforcement" when they were investigating him. Presentence Rep., R.33, PageID 125. And he suggests that his two felon-in-possession convictions do not themselves suffice to show his dangerousness. Yet these factual arguments cannot help Black on plain-error review because they do nothing to establish a "clear" constitutional error under our "current" caselaw interpreting the Second Amendment. *Olano*, 507 U.S. at 734 (citation omitted).

*Guidelines Challenge*. Black next claims that the district court wrongly imposed the stolen-weapon enhancement. This enhancement tells a district court to add two to a defendant's base offense level if "any firearm was stolen." U.S.S.G. § 2K2.1(b)(4)(A). The enhancement has well-established substantive and procedural components. As a matter of substance, we have given the word "stolen" its common meaning to cover both a fraudulently acquired gun and a gun taken without the owner's consent. *See United States v. Brown*, 86 F.4th 1164, 1166–67 (6th Cir. 2023); *United States v. Jackson*, 401 F.3d 747, 749–50 (6th Cir. 2005). The enhancement also lacks any language that would require the defendant to know (or have reason to know) that the firearm was stolen. *Cf.* U.S.S.G. § 2K2.1 cmt. n.8(B); *United States v. Murphy*, 96 F.3d 846, 848–49 (6th Cir. 1996). As a matter of process, the government must prove that the firearm was stolen by a

preponderance of the evidence. *See United States v. Chambers*, 638 F. App'x 437, 445 (6th Cir. 2015); *United States v. Dupree*, 323 F.3d 480, 491 (6th Cir. 2003). And we review a district court's factual finding that a firearm was stolen for clear error. *See United States v. Carroll*, 2024 WL 4953549, at *3 (6th Cir. Dec. 3, 2024).

We have also held that a district court may rely on information in a police report—including hearsay statements—only if the information has a "minimal indicium of reliability." *United States v. Armstrong*, 920 F.3d 395, 398 (6th Cir. 2019) (citation omitted). At the same time, we have made clear that we do "not endorse the regular use of police reports as evidence in sentencing determinations." *United States v. Jones*, 815 F. App'x 870, 878 (6th Cir. 2020) (quoting *United States v. Jackson*, 477 F. App'x 377, 379 (6th Cir. 2012)). Police reports are often unreliable because they "are not filed in court, are not sworn to, and are developed for an investigatory purpose." *United States v. Jones*, 453 F.3d 777, 780 (6th Cir. 2006). Indeed, police reports are "advocacy pieces, written for prosecutors to use in deciding whether or how to charge a suspect." *United States v. Jordan*, 742 F.3d 276, 280 (7th Cir. 2014).

The district court violated these limits on the use of police reports here. To impose the enhancement, it relied exclusively on a police report summarizing an officer's interview of the registered owner of the Sig Sauer. The owner told the officer that he let his friend "borrow the handgun for protection" in 2019 and that he had forgotten about the gun until 2021. Rep., R.34, PageID 146. After the owner could not reach the friend, he began reaching out to the friend's family on Facebook. *Id.* One of the friend's relatives then conveyed that the friend said that "someone" had "stolen" the gun. *Id.* At the time of this interview, the owner had been working on tracking down the firearm's paperwork "to report it to the police as stolen." *Id.*

The unreliable nature of this police report is evident from its multiple layers of hearsay. In fact, the police report contained quadruple hearsay: (1) the officer's out-of-court statements in the report; (2) the firearm owner's statement to the officer that he let his friend "borrow the handgun for protection" in 2019 but then forgot about it until 2021; (3) the relative's statement to the owner about a conversation he had with the friend; and (4) the friend's statement to the relative that someone had "stolen" the gun. *Id.*

The police report also relied on the owner's self-serving explanation for transferring a firearm to a convicted felon. Although the firearm apparently left the owner's possession in 2019, he did not report it as stolen for the next three years. The owner reported the firearm stolen only after law enforcement had recovered the firearm from Black and confronted the owner about it. At this point, the owner would have had good reason to lie: knowingly transferring a firearm to a felon is a crime. *See* 18 U.S.C. § 922(d)(1).

But even if the gun owner accurately reported the statements he claimed to hear, there is no way to reliably verify whether those statements are true. The report provides no information about the identity of the gun owner's friend or the family member contacted through Facebook. Nor does it provide context for the relationships between any of the persons involved. We thus cannot know, for example, whether the friend may have had a reason to lie to the family member about the gun being stolen, or whether the family member had a reason to lie to the gun owner. The report likewise does not provide information about the "someone" who purportedly stole the gun or the circumstances of the alleged theft. So there is no way to analyze the veracity of the central claim underlying all this hearsay—that is, whether the gun was actually "stolen."

The record does not show that the government met its burden of proving it was more likely than not that the firearm was stolen. The government offered no "evidence in the record external

to the police report's own features tend[ing] to support the reliability of the report and its allegations." *Jones*, 815 F. App'x at 879; *see United States v. Al-Cholan*, 610 F.3d 945, 955 (6th Cir. 2010) ("[C]orroborating evidence can provide [hearsay] statements with a sufficient indicia of reliability."). For example, in *Carroll*, we affirmed the district court's application of the stolen-firearm enhancement based on a corroborated police report. 2024 WL 4953549, at *5. Although the firearm owner's statements in the police report were hearsay, they were corroborated by an officer's testimony that he had spoken with the firearm owner and that the owner said the firearm had been stolen. *See id*. at *2, 5. Yet in this case, the government did not call a single witness to testify about the alleged theft. Without corroborating evidence, the police report's hearsay statements are too unreliable to justify imposing the sentencing enhancement.

The dissent asserts that Black did not do enough to preserve the argument that the quadruple hearsay was insufficiently reliable. Black may not have cited the minimal-indicium-of-reliability test, but he did argue that "there was insufficient evidence that the firearm was, in fact, stolen." Appellant's Br. at 35. He asserted that "there was no testimony presented at all regarding whether it was stolen." *Id.* And he argued that the owner's purported statement to police was "not credible" because "nobody ever reported the firearm stolen" and the owner "had every reason to lie." *Id.* at 35–37. That is more than enough to raise the issue.

That conclusion leaves the question whether this error was harmful. When a district court errs in applying a sentencing enhancement, this court must "remand for resentencing unless we are 'certain' the error was harmless." *United States v. Alvarado*, 95 F.4th 1047, 1053 (6th Cir. 2024) (citation omitted). The government bears the burden of proving with certainty that the sentencing error did not cause the defendant to receive a more severe sentence. *United States v. Lanesky*, 494 F.3d 558, 561 (6th Cir. 2007).

The government, once again, fails to meet its burden. After applying the sentencing enhancement, the district court determined that Black's guidelines range was 37 to 46 months. Without the two-level enhancement, Black's guidelines range would have been 30 to 37 months. The district court then imposed a within-guidelines sentence of 42 months of imprisonment. Because the sentencing enhancement yielded a different guidelines range and there is no indication that the district court would have imposed the same sentence without the enhancement, the error was not harmless. *See Alvarado*, 95 F.4th at 1056.

We affirm Black's conviction, but reverse his sentence, and remand for resentencing.

MURPHY, Circuit Judge, concurring in part and dissenting in part. I agree with my colleagues that Curtis Black's claim under the Second Amendment cannot satisfy the deferential plain-error test. I also may well have agreed with their resolution of Black's challenge to the stolen-firearm enhancement if I thought he had made the arguments on which they primarily rely. But he did not. And I would not make arguments for him. I thus respectfully dissent.

Under the stolen-firearm enhancement, a district court should increase a defendant's base offense level by two if "any firearm was stolen" during the offense. U.S.S.G. § 2K2.1(b)(4)(A). The government bears the burden to prove that a firearm had been stolen by a preponderance of the evidence. *See United States v. Whitlow*, __ F.4th __, 2025 WL 1122357, at *8 (6th Cir. Apr. 16, 2025). And we must treat the district court's finding that a firearm had been stolen as a question of fact that we review under the deferential clear-error test. So we must uphold the finding if it represents a "plausible" reading of the record. *United States v. O'Lear*, 90 F.4th 519, 536 (6th Cir. 2024) (citation omitted); *see United States v. Caston*, 851 F. App'x 557, 560 (6th Cir. 2021).

This deferential standard of review should doom Black's claim. The record contained a police report from October 2022 summarizing an officer's interview of the Sig Sauer's owner. According to that report, the owner told the officer that "he was missing" this specific gun when asked if he was missing any firearms. Rep., R.34, PageID 146. The owner explained that he had lent the gun to a friend "for protection" back in 2019 because she had been "going through a breakup." *Id.* He explained that she was "familiar with firearms" and had previously used the gun at "competition shoots." *Id.* But he began to have "less and less contact" with this friend and "forgot about the handgun" until 2021. *Id.* At that time, he "began trying to contact her" to get the Sig Sauer back. *Id.* But "she was not responding to him." *Id.* After January 2022, he gave up trying to contact her and started contacting her "family members through Facebook." *Id.* He

10

had one of her family members ask her about the gun, and she told this person "that someone had stolen" it. *Id.*

Both in the district court and on appeal, Black challenged this enhancement in a narrow way. He suggested that the government presented "insufficient evidence" because it relied only on arguments from the "government attorney" and statements in the "pre-sentence report." Appellant's Br. 35. Black added that the owner was "not credible" because he had a motive to lie: if he had actually lent the gun to a felon like Black, he could face criminal liability. *Id.*; Tr., R.43, PageID 188. And Black mentioned that the owner did not report it stolen until after the police interrogated him. Appellant's Br. 35; Tr., R.43, PageID 188.

None of these three arguments has merit. To start, Black is factually wrong to argue that the government presented only attorney argument and the presentence report at sentencing. It also introduced the police report. Rep., R.34, PageID 146.

Black fares no better with his claims about the owner's credibility and the delayed reporting of the theft. The district court found that the owner provided "a reasonable explanation" for the delay. Sent. Tr., R.43, PageID 189. According to the police report, the owner "knew the make and model of the firearm" but "did not know the serial number." Rep., R.34, PageID 146. He was still trying to find the "information" that he thought he needed before reporting it stolen. *Id.* The district court added that no other evidence suggested that the owner "lied" or had "criminal culpability" that he was trying to cover up. Sent. Tr., R.43, PageID 189. We generally must defer to credibility findings of this kind. *See, e.g.*, *United States v. Lamb*, 2023 WL 8628956, at *4 (6th Cir. Dec. 13, 2023); *United States v. Armstrong*, 920 F.3d 395, 399 (6th Cir. 2019). And I do not have a "firm conviction" that the court "committed" a "mistake" by finding the owner credible. *Armstrong*, 920 F.3d at 398 (citation omitted). Indeed, Black also identifies no evidence

to suggest that the owner had lent him the gun. *Cf. United States v. Pinet-Fuentes*, 888 F.3d 557, 560 (1st Cir. 2018). So what the First Circuit said in a similar case could just as well have been said in this one: "As between the owner's unimpeached statement and the story told by a defendant with an obvious motive to fabricate, the district court could choose to credit the owner." *Id.*

My colleagues reverse primarily for a reason that Black never raised. They point out that the police report that contains the owner's statements teemed with hearsay. The officer did not testify, so his report itself was hearsay. The gun's owner did not testify, so his statements to the officer were double hearsay. The owner's friend did not testify, so her statements to her relative were triple hearsay. And the friend's relative did not testify, so her statements to the owner about what the friend had said were quadruple hearsay. My colleagues would find the police report insufficiently reliable on these grounds.

I share their concerns. And one might wonder why the district court did not address this issue at all. But there is an obvious answer. As far as I can tell, Black has never even used the word "hearsay" in any of his arguments. He did not argue that the court should reject the owner's claims because of their hearsay nature in the district court. And he did not make this claim on appeal. He thus has never even cited our controlling legal test for evaluating hearsay (whether it has a "minimal indicium of reliability")—let alone attempted to apply that test to the police report. *Armstrong*, 920 F.3d at 398 (citation omitted); *see also Lamb*, 2023 WL 8628956, at *4; *United States v. Jones*, 815 F. App'x 870, 876 (6th Cir. 2020); *United States v. Silverman*, 976 F.2d 1502, 1504 (6th Cir. 1992) (en banc). Indeed, even after the government pointed out that district courts may rely on hearsay at sentencing, Black said nothing about this enhancement in his reply brief.

I thus would find this hearsay argument forfeited twice over. Black forfeited the argument in the district court. *See O'Lear*, 90 F.4th at 534–35. And he forfeited it again on appeal.

*See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018); *United States v. Parks*, 1998 WL 384562, at *1 (6th Cir. June 18, 1998) (order).

To be sure, I agree that forfeiture at times can raise close calls. After all, a party need only raise a "claim" in the district court and then can make new sub-arguments in support of that claim on appeal. *See United States v. Reed*, 993 F.3d 441, 453 (6th Cir. 2021). But what counts as a "claim"? And what counts as a "sub-argument"? We have applied these forfeiture rules case-by-case. In this case, I find it unfair to the government and the district court to resolve the appeal on these hearsay grounds because they never received any opportunity to respond.

And while I may well have agreed with my colleagues after full briefing on this hearsay question, I do see one counterargument. Does the hearsay from the friend or the friend's relative even matter if the owner was credible? Suppose the friend was lying about the theft and she had instead given the gun to Black. If the owner asked for his gun back and she refused to return it on the fraudulent ground that it had been stolen, why wouldn't she have stolen it? We have held that a "fraudulently acquired" gun is still stolen. *See United States v. Brown*, 86 F.4th 1164, 1166 (6th Cir. 2023). And Black would not have needed to know about the theft to trigger the enhancement. *See* U.S.S.G. § 2K2.1 cmt. n.8(B); *United States v. Murphy*, 96 F.3d 846, 848–49 (6th Cir. 1996). At day's end, though, I would not go down this rabbit hole. Because these arguments are far afield of the briefing, I would rely on forfeiture alone. I thus respectfully dissent in part.